# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RGIS INTERNATIONAL TRANSITION HOLDCO, LLC, RGIS INTERNATIONAL TRANSITION HOLDCO MEXICO, LLC, and RGIS MEXICO, LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. N21C-12-077 PRW CCLD |
| RETAIL SERVICES WIS CORPORATION, RETAIL SERVICES WIS HOLDINGS CORPORATION, JAMES ROSE, and RICHARD BAXTER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: January 12, 2024
Decided: February 13, 2024

*Upon Defendants' Motion to Dismiss,*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Christopher P. Simon, Esquire, David G. Holmes, Esquire, CROSS & SIMON, LLC, Wilmington, Delaware, Jed M. Schwartz, Esquire, Christopher Almon, Esquire, Michael T. Frieda, Esquire, MILBANK LLP, New York, New York, *Attorneys for Plaintiffs RGIS International Transition Holdco, LLC, RGIS International Holdco, LLC, and RGIS Mexico, LLC.*

Steven T. Margolin, Esquire, Bryan T. Reed, Esquire, GREENBERG TRAURIG, LLP, Wilmington, Delaware, *Attorneys for Defendants James Rose and Richard Baxter.*

**WALLACE, J.**

Plaintiffs here purchased shares of certain companies from sellers. Turns out, those certain companies had certain troublesome undisclosed liabilities, including millions owed to Mexican taxation authorities. Plaintiffs have responded with a fraud claim against the Delaware-incorporated seller entities. To boot, Plaintiffs have brought civil conspiracy and aiding and abetting fraud claims against the sellers' CEO and CFO, both of whom reside in Texas.

Those officer-defendants now move to dismiss the claims brought against them as individuals. They say they aren't subject to personal jurisdiction in Delaware and—even were they—that Plaintiffs failed to adequately state claims against them as individual defendants.

Plaintiffs have pled themselves into a pickle. The non-resident officer-defendants could be subject to personal jurisdiction in Delaware under a minimum-contacts analysis only if they were acting *within* their corporate role. But those same officer-defendants cannot be liable for the civil conspiracy or aiding and abetting claims unless they were acting *outside* their corporate role. All that said, the Court need not make the call on whether the tag was applied or missed on either end. The Plaintiffs' claims against the individual officer-defendants don't survive Rule 12(b)(6) scrutiny and are, therefore, dismissed for that failure.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. THE PARTIES

Plaintiffs RGIS International Transition Holdco, LLC, RGIS International Transition Holdco Mexico, LLC, and RGIS Mexico, LLC (collectively, "RGIS") are Delaware limited liability corporations.[2]

Defendants Retail Services WIS Corporation and Retail Services WIS Holdings Corporation (the "Selling Entity Defendants") are Delaware corporations headquartered in Dallas, Texas.[3] Individual Defendants James Rose and Richard Baxter both reside in Texas.[4] Mr. Rose is the Chief Executive Officer and Mr. Baxter the Chief Financial Officer of the Selling Entity Defendants.[5]

### B. FACTUAL BACKGROUND

In September 2021, RGIS purchased from the Selling Entity Defendants the entire issued share capital of three entities—WIS UK, WIS Mexico, and PSI (collectively, the "Transferred Companies")[6]—for an aggregate purchase price of

---

[1]  This background is drawn from the pleadings, which include the Complaint, Answer, Counterclaims, and the documents incorporated therein.

[2]  Amended Complaint ("Am. Compl.") ¶ 9 (D.I. 22).

[3]  *Id*. ¶¶ 10-12.

[4]  *Id*. ¶¶ 13-14.

[5]  *Id*.

[6]  WIS Mexico and PSI are the entities located in Mexico and, as later discussed, subject to Mexican tax liability. Mr. Rose and Mr. Baxter both served on the board of managers for WIS Mexico and PSI. *Id*.

$7.5 million.[7]

The governing Share Purchase Agreement contains the Selling Entity Defendants' representations and warranties.[8] Those now mentioned are pertinent to this motion.[9]

SPA Section 5.1.4 addresses the Transferred Companies' liabilities. Under Section 5.1.4.1, Selling Entity Defendants represent and warrant that RGIS "has been provided with true and accurate copies of" the Transferred Companies' balance sheets and income statements for the fiscal year ended March 31, 2021, and the four months ended July 31, 2021.[10] And those financial statements "present fairly, in all material respects, the financial position and the results of operations of the Transferred Companies as of the respective dates thereof and for the respective periods covered . . . ."[11] That section also provides that "the Transferred Companies have no indebtedness other than (i) as reflected on the Financial Statements, or (ii) as incurred in the Ordinary Course of Business."[12] SPA Section 5.1.4.2 states,

> [t]here are no material liabilities or obligations of the Transferred
> Companies of any nature, whether or not accrued, contingent or
> otherwise, other than those that (i) are reflected or reserved against

---

7    Am. Compl. ¶ 1.

8    *Id*., Ex. 1 ("SPA").

9    Other representations and warranties are also included in the Amended Complaint, but only those included here are relevant to the claims brought against Mr. Rose and Mr. Baxter.

10   SPA § 5.1.4.1.

11   *Id*.

12   *Id*.

on the Financial Statements or otherwise set forth in this Agreement, (ii) have been incurred in the Ordinary Course of Business of the Transferred Companies since March 31, 2021, (iii) are permitted or contemplated by this Agreement, or (iv) have been discharged or paid off since March 31, 2021.[13]

Section 5.1.9 of the SPA contains the Selling Entity Defendants' representations and warranties with respect to taxes. Section 5.1.9.1 states, in pertinent part:

> To the knowledge of the Seller, (i) all material Tax Returns required to be filed by or with respect to any Transferred Company have been filed and all such Tax Returns were correct and complete in all material aspects; (ii) all material Taxes due and payable have been paid or will be paid by the due date thereof; (iii) there is no action, suit, proceeding, investigation, audit, deficiency, adjustment or claim pending or, to the knowledge of the Seller, threatened in writing with respect to any Taxes of the Transferred Companies; (iv) each of the Transferred Companies has complied with all applicable Laws relating to the payment and withholding of Taxes and has duly and timely withheld and paid over to the appropriate taxing authorities all amounts required to be so withheld and paid over . . . .[14]

Under SPA Section 5.1.9.3, Selling Entity Defendants represent and warrant that,

> [t]o the knowledge of the Seller, the Transferred Companies have properly collected and remitted all material amounts of sales and similar Taxes with respect to sales or leases made or services provided to their customers and have properly received and retained any appropriate Tax exemption certificates or other documentation for all such sales, leases or other services made without charging or remitting any material amounts of sales or similar Taxes that qualify as exempt from sales and similar Taxes.[15]

---

[13]  *Id.* § 5.1.4.2.

[14]  *Id.* § 5.1.9.1.

[15]  *Id.* § 5.1.9.3.

The "knowledge of the Seller" is defined in the Agreement as "the actual knowledge after reasonable inquiry of James Rose and Richard Baxter."[16] Indeed, Mr. Rose and Mr. Baxter represented to RGIS that they were fully knowledgeable regarding all relevant issues and that they would be RGIS's sole contact during negotiations.[17]

After the closing, RGIS learned of WIS Mexico and PSI's outstanding tax liabilities in Mexico.[18] Those companies owed the Mexican taxation authorities upwards of 40 million Mexican pesos (approximately $2.5 million U.S. dollars) for various unpaid taxes stemming back to 2007.[19] In addition, an open audit into WIS Mexico from 2010 has a potential tax liability of 71 million Mexican pesos (approximately $4.2 million U.S. dollars).[20]

RGIS was unaware of these outstanding tax liabilities when they entered into the Agreement. At closing, the Selling Entity Defendants presented only a consolidated report to RGIS with no separate financial statement of the Transferred Companies.[21]

In contrast, the Selling Entity Defendants were searching for solutions to the

---

[16] *Id.* § 1 (Definitions and interpretation).

[17] Am. Compl. ¶ 19.

[18] *Id.* ¶¶ 4, 27.

[19] *Id.* ¶¶ 28-33.

[20] *Id.* ¶ 32.

[21] *Id.* ¶ 36.

tax liabilities well before the sale occurred. According to PSI and WIS Mexico's books and records, Selling Entity Defendants attempted to move PSI's operations and employees entirely to WIS Mexico, leaving PSI with no operations or assets—only liabilities.[22]

The named Individual Defendants were also involved in efforts to resolve those liabilities. In 2015, Mr. Rose heard a presentation about PSI's liabilities, as well as the plan to move PSI's assets, and was then-on privy to the effort.[23] And in 2021, Mr. Baxter authorized a payment of 7.761 million Mexican Pesos purportedly to settle a tax liability of approximately 71 million Mexican Pesos.[24] But that payment was never provided to the Mexican tax authorities; instead, it was distributed to employees of WIS Mexico.[25] In connection with that payment, a document was created purporting to be a settlement with Mexican tax authorities.[26] That settlement document was later discovered to be fabricated.[27] Mr. Baxter had some knowledge of the fabricated settlement document, as he asked those same employees for an update on the "tax liability settlement" just prior to the sale

---

[22] *Id.* ¶¶ 40-41.

[23] *Id.* ¶ 42.

[24] *Id.* ¶¶ 43-44.

[25] *Id.* ¶ 44.

[26] *Id.* ¶¶ 43-44.

[27] *Id.* ¶ 44.

transaction.[28]

In November 2021, RGIS demanded compensation for the liabilities it has now incurred and currently faces.[29]  Defendants refused, and RGIS filed suit.[30]

## C. PROCEDURAL BACKGROUND

RGIS initiated this action on December 10, 2021.[31]  After a long delay,[32] RGIS served summonses in June 2023.[33]  The Individual Defendants answered with their initial motion to dismiss.[34]

In response, RGIS filed an Amended Complaint, bringing three causes of action: (1) fraud against the Selling Entity Defendants;[35] (2) civil conspiracy against the Individual Defendants,[36] and; (3) aiding and abetting fraud against the Individual Defendants.[37]  The Individual Defendants have answered with another motion to

---

[28]  *Id.* ¶ 45.

[29]  *Id.* ¶ 8.

[30]  *Id.*

[31]  D.I. 1.

[32]  Instead of moving this case forward, RGIS waited to act upon its initial Complaint for months—providing intermittent status updates only at the Court's behest. *See* D.I. 2 (status update dated July 25, 2022); D.I. 4 (status update dated Feb. 9, 2023); D.I. 6 (status update dated May 24, 2023).  Without question, RGIS's months-long delay extended well past this Court's 120-day time limit for service of summonses and complaints. *See* Super. Ct. Civ. R. 4(j).

[33]  D.I. 10-15.

[34]  D.I. 16.

[35]  Am. Compl. ¶¶ 60-72.

[36]  *Id.* ¶¶ 73-76.

[37]  *Id.* ¶¶ 77-80.

dismiss.[38] That motion is now ripe for decision.

## II. PARTIES' CONTENTIONS

Mr. Rose and Mr. Baxter seek to dismiss Counts II and III of the Amended Complaint.[39] In support, they make two main arguments.[40] First, they contend that they are not subject to personal jurisdiction in the State of Delaware.[41] Specifically, Mr. Rose and Mr. Baxter say that they are not necessary and proper parties under 10 *Del. C.* § 3114, and that constitutional due process concerns warrant dismissal of the claims against them.[42]

Second, Mr. Rose and Mr. Baxter contend that neither the civil conspiracy nor the aiding and abetting fraud claim is pled such that they withstand the reasonable conceivability examination that must be engaged.[43] They argue that the Amended Complaint pleads insufficient facts of the elements necessary to state either claim.[44]

---

[38] Individual Defendants' Renewed Motion to Dismiss Counts II and III of Plaintiffs' Amended Complaint ("Defs.' Mot.") (D.I. 25).

[39] *See generally id.*

[40] In addition to that described here, Individual Defendants also urge the Court to consider two documents outside of the pleadings. *See id.* at 23-24; *id.*, Ex. A (Tax Settlement Document); *id.*, Ex. B (Deloitte Letter). Because the motion can be and is disposed of on the 12(b)(6) failure-to-state-a-claim merits alone, the Court didn't consider these documents. *See* Super. Ct. Civ. R. 12(b)(6) (instructing how the Court must proceed under Rule 56 when matters outside the pleadings are presented to and not excluded by the Court).

[41] *Id.* at 12-18.

[42] *Id.*

[43] *Id.* at 19-26.

[44] *Id.* at 19-23, 25-26.

Additionally, as basis for dismissal, they point to Delaware law that explains that a corporation cannot conspire with its own officers, directors, or agents.[45]

RGIS opposes the Individual Defendants' motion.[46] In its opposition, RGIS contends that Messrs. Rose and Baxter are subject to personal jurisdiction in Delaware under Section 3114.[47] And it insists that both the civil conspiracy claim as well as the aiding and abetting fraud claim are sufficiently pled here.[48]

With reference to the latter, RGIS contends that both claims fall under the personal motivation exception to the Delaware rule that a corporation cannot conspire with its own officers, directors, or agents.[49] In support, RGIS says that Messrs. Rose and Baxter acted "to cause the sale of the Transferred Companies and thereby eliminate their personal liability to Mexican authorities for non-compliance with [tax] requirements."[50] According to RGIS, "[u]nder Mexican law, directors such as Rose and Baxter are subject to liability for non-compliance with [tax] requirements, but that exposure is potentially reduced once they no longer serve as directors, and the sale had the effect of Rose and Baxter no longer serving as

---

[45] *Id*. at 22-23; Individual Defendants' Reply Brief in Support of Motion to Dismiss ("Defs.' Reply Br.") at 6-13 (D.I. 30).

[46] *See generally* Plaintiffs' Answering Brief in Opposition to Individual Defendants' Renewed Motion to Dismiss ("Pls.' Answering Br.") (D.I. 28).

[47] *Id*. at 24-34.

[48] *Id*. at 8-17.

[49] Pls.' Answering Br. at 13-18.

[50] *Id*. at 14 (quoting Am. Compl. ¶ 74).

directors of the Mexican Entities, leaving the Transferred Companies with the liability."[51]

Because this motion can be disposed of on Rule 12(b)(6) grounds alone, the Court need not resolve the personal jurisdiction challenge posed.

### III. STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), '[t]he legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint.'"[52] Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[53]

"If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[54] This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under

---

[51] Am. Compl. ¶ 46; *id*. at 13-14.

[52] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (alteration in original) (quoting Super. Ct. Civ. R. 12(b)(6)).

[53] *Id.* (alteration in original) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[54] *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

-10-

no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[55]

Civil Rule 9(b) requires one to plead a fraud claim with particularity.[56]

## IV. DISCUSSION

### A. RGIS'S CLAIMS OF CIVIL CONSPIRACY AND AIDING AND ABETTING FAIL.

In Counts II and III, RGIS alleges that Mr. Rose and Mr. Baxter engaged in acts of civil conspiracy as well as aiding and abetting fraud.[57] A civil conspiracy claim requires a plaintiff establish that "two or more persons combined or agreed with the intent to do an unlawful act or to do an otherwise lawful act by unlawful means."[58] An aiding and abetting claim requires a plaintiff allege "(i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance."[59] Both claims must be pled with a certain degree of particularity.[60]

---

[55] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004) (citation omitted).

[56] Super. Ct. Civ. R. 9(b).

[57] Am. Compl. ¶¶ 73-80.

[58] *In re Transamerica Airlines, Inc.*, 2006 WL 587846, at *6 (Del. Ch. Feb. 28, 2006).

[59] *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *23 (Del. Ch. Nov. 26, 2014).

[60] *Id*. at *20-23 (applying the Rule 9(b) particularity standard to civil conspiracy and aiding and abetting claims); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005) ("Where a complaint alleges fraud or conspiracy to commit fraud, the Rules of this court call for a higher pleading standard, requiring the circumstances constituting the fraud or conspiracy to 'be pled with particularity.'" (quoting *Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1066 (Del. Ch. 1989), and citing Ch. Ct. R. 9(b), which is identical to Super. Ct. Civ. R. 9(b) and states: "In *all* averments of fraud, the circumstances constituting fraud shall be stated with particularity." (cleaned up and emphasis added))).

-11-

Generally, a corporation cannot be deemed to have conspired with its wholly owned subsidiary, or its officers and agents.[61] And "like civil conspiracy, officers and agents cannot aid and abet their principal or each other in the commission of a tort."[62] But these general rules may not apply when the officer or agent of the corporation steps out of his corporate role and acts on personal motives.[63] A corporate officer does not step out of his corporate role unless he "seeks to gain a benefit independent of [his] financial interest resulting from [his] employment by or investment in [his employer]."[64]

While RGIS tries mightily to convince otherwise, the personal motivation exception just doesn't save the claims challenged here. The Amended Complaint describes Messrs. Rose and Baxter acting *within* their capacities as CEO and CFO of the Selling Entity Defendants while purportedly perpetuating a fraud against RGIS.

To argue the personal motivation exception, RGIS mostly relies on its

---

[61] *In re Transamerica Airlines, Inc.,* 2006 WL 587846, at *6 (citing *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc*., 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005)); *see also Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *17-18 (Del. Ch. June 11, 2020) (characterizing the general rule as a "basic law of conspiracy").

[62] *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *18 (Del. Ch. June 30, 2021) (quoting *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *11 (Del. Super. Ct. June 6, 2012)).

[63] *In re Transamerica Airlines, Inc.,* 2006 WL 587846, at *6 (citing *Amaysing Techs. Corp.*, 2005 WL 578972, at *7); *Largo Legacy Grp., LLC*, 2021 WL 2692426, at *18 (citing same).

[64] *Anschutz Corp.*, 2020 WL 3096744, at *18 (alteration in original) (quoting *Amaysing Techs. Corp.*, 2005 WL 578972, at *8).

allegation that Messrs. Rose and Baxter are "reducing [their] personal exposure to liability in Mexico" by selling the companies with outstanding tax liabilities.[65] But RGIS nowhere reveals or alleges facts demonstrating that the sale (or any act related thereto) was done outside of the Individual Defendants' corporate roles, or pursuant to some particularized personal motives. RGIS also broadly asserts that Mr. Rose and Mr. Baxter could be liable for outstanding tax liabilities as directors of the Transferred Companies, and that liability "is potentially reduced" once they no longer serve as directors.[66] Yet, RGIS points to no law substantiating that claim, and identifies no facts showing they acted for that reason.

Messrs. Rose and Baxter may in fact personally benefit from selling those companies with outstanding tax liabilities. But that alone doesn't show that they stepped outside of their corporate role and acted out of personal motivation to do so. Indeed, as it must, RGIS admits that its allegation is that the Individual Defendants it's after "*us[ed] their capacities as officers* and the benefits of Delaware law[] to negotiate a transaction intended to carry out a fraud against Plaintiffs."[67] So, even when drawing all reasonable inferences in its favor, RGIS has pled insufficient facts

---

[65] Am. Compl. ¶¶ 46, 74; Pls.' Answering Br. at 13-14.

[66] Am. Compl. ¶ 46; Pls.' Answering Br. at 13.

[67] Pls.' Answering Br. at 32 (emphasis added). Indeed, the suggested benefits Messrs. Rose and Baxter may have supposedly gained from selling the Transferred Companies to RGIS are more aptly categorized as "resulting from their employment," because the facts and occurrences of the claims against the individuals and the fraud claim against the Selling Entity Defendants are so intertwined. *See Anschutz Corp.*, 2020 WL 3096744, at *18.

to save its otherwise impermissible conspiracy and aiding and abetting claims via the personal motivation exception.

## V. CONCLUSION

RGIS cannot bring the civil conspiracy or aiding and abetting fraud claims it has penned against Mr. Rose and Mr. Baxter; corporations can't do either with their own officers. RGIS's attempt to save those claims by resorting to the personal motivation exception fails in its pleading.

The Individual Defendants' Motion to Dismiss Counts II and III of the Amended Complaint is **GRANTED**.

**IT IS SO ORDERED.**

_____

Paul R. Wallace, Judge